JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YEFFRI ULLOA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BLACKSTONE CONSULTING, INC. et al.,<br><br>　　　　　　Defendants. | Case No.: 5:24-cv-01134-HDV-SKx<br><br>**ORDER (1) DENYING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) [DKT. NO. 13]; AND (2) GRANTING PLAINTIFF'S MOTION TO REMAND [DKT. NO. 15]** |

I.      INTRODUCTION

This putative class action arises from Plaintiff Yeffri Ulloa's employment as a security guard with Defendants Blackstone Consulting Inc. and Kaiser Foundation Hospital ("Defendants"). Plaintiff alleges that Defendants failed to pay him (and the class) for overtime, meal breaks, and rest periods as required by California wage and hour laws.

Before the Court are two motions: (1) Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and (2) Plaintiff's Motion to Remand. Defendants contend in the main that all of Plaintiff's state law claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA") because they are expressly predicated on (and require interpretation of) rights created by the parties' collective bargaining agreement ("CBA"). More specifically, Defendants maintain that pursuant to California Labor Code Sections 514 and 512, Plaintiff's wage claims cannot be asserted under California law because the parties' most recent CBA provides for wage payments of "30 percent more than the state minimum wage." Motion to Dismiss at 8–9.

But while Plaintiff's current CBA does provide for the 30% premium set forth in Section 514 and 512, the ***prior*** CBA—which applied for a significant period of Plaintiff's employment and most of the four-year damages period for the class—did ***not*** meet this premium threshold either for Plaintiff or for the other putative class members.[1] For this reason, California Labor Code Sections 514 and 512 do not apply. The Court further finds that Plaintiffs' wage and hour claims do not "vindicate a right or duty created by the CBA itself" nor do they require a legal interpretation of the CBA(s), and are therefore not preempted under the LMRA under the test set forth by the Ninth Circuit in *Burnside v. Kiewit Pac. Corp*. 491 F.3d 1053, 1059–60 (9th Cir. 2007). Because there is no preemption, the entirety of the action must be remanded to state court.

---

[1] Notably, Defendants did *not* identify or address the first CBA in their motion to dismiss, nor did they provide a satisfactory response for ignoring this key document. While the Court cannot find that its omission by Defendants' counsel was deliberate or sanctionable, the failure by counsel to even address this document is nonetheless deeply concerning.

## II. FACTUAL BACKGROUND

Plaintiff began working as a hospital security guard in June 2023. Complaint ¶ 2. Plaintiff's duties include patrolling the premises, opening and closing doors, and checking badges. *Id*.

Plaintiff alleges that Defendants have failed to pay him overtime in violation of California state wage and hour laws. Complaint ¶ 15. Plaintiff states that employees were required to work off the clock by coming in early and leaving work late without clocking in for the entire time, completing pre-shift and post-shift tasks without clocking in, and working through meal periods and rest period. *Id*. Plaintiff also avers that Defendants failed to provide employees with timely and uninterrupted thirty (30) minute meal periods for days on which they worked more than five hours, and failed to provide a second period for days in which they worked more than ten hours. *Id*. ¶ 17. Finally, Plaintiff maintains that Defendants did not provide rest periods of at least ten minutes per four hours worked as required by California law. *Id*. ¶ 18.

Plaintiff filed his Complaint against Defendants in Riverside Superior Court on April 23, 2024. Plaintiff's Complaint includes claims for (1) failure to pay overtime wages, (2) failure to pay minimum wages, (3) failure to provide meal periods, (4) failure to provide rest periods, (5) waiting time penalties, (6) wage statement violations, (7) failure to pay timely wages, (8) failure to indemnify, (9) violation of Labor Code Section 227.3, and (10) unfair competition. Complaint ¶¶ 37-106. Specifically, Plaintiff seeks damages for the class for the four-year period from 2020-2024. *Id*. ¶¶ 15-26. Defendants removed the case to this Court on May 29, 2024 on the basis of LMRA preemption. [Dkt. No. 1].

Defendants filed their Motion to Dismiss ("Motion") on June 17, 2024, and Plaintiff filed his Motion to Remand on June 28, 2024. [Dkt. Nos. 13, 15]. The only CBA attached or discussed in Defendants' Motion was the most recent CBA. On September 4, 2024, the Court ordered Defendants to file a supplemental declaration with the previous collective bargaining agreement that governed Plaintiff's employment beginning in June 2023. [Dkt. No. 27]. Defendants filed their supplemental declaration with the prior CBA on September 6, 2024. [Dkt. No. 28].

Upon receipt of the supplemental submission, the Court heard oral argument on both motions on December 12, 2024, and took the matters under submission. [Dkt. No. 33].

### III. LEGAL STANDARD

Section 301 of the LMRA states in relevant part, that "[s]uits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States." 29 U.S.C. § 185(a). Although preemption is not mentioned specifically in the statute, courts have consistently held the LMRA expressly "authoriz[es] federal courts to create a uniform body of federal common law to adjudicate disputes that *arise out of labor contracts*." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019) (emphasis added); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985). For this reason, actions "alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Lueck*, 471 U.S. at 210. "A state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." *Id.*[2]

The Ninth Circuit in *Burnside v. Kiewit Pac. Corp.* 491 F.3d 1053, 1059–60 (9th Cir. 2007) established a two-part test to determine whether state law claims are preempted by Section 301. First, the Court must determine whether the claim in question seeks purely to "vindicate a right or duty created by the CBA itself" or is merely asserting a right conferred by state law. *Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 842 (9th Cir. 2022); *see also Curtis*, 913 F.3d at 1152. If the right exists only under the CBA, then the claim is preempted, and no further analysis is needed. *Columbia Export Terminal*, 23 F.4th at 842.

If not, however, courts must perform a secondary analysis to determine whether a plaintiff's state law right is "substantially dependent" on an analysis of the CBA. *Id.*; *see also Caterpillar*, 482 U.S. at 394; *Burnside*, 491 F.3d at 1060. The critical question here is "whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." *Curtis*, 913 F.3d at 1152 (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016)). The

---

[2] "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). However, the LMRA "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987).

4

Ninth Circuit has "stressed that 'interpretation' is construed *narrowly* in this context"[3] and that "[a]t this second step of the analysis, 'claims are only preempted to the extent there is an *active dispute* over 'the meaning of contract terms.' " *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)) (emphasis added).

## IV.   DISCUSSION

### A.   Claim One:  Overtime Violations

Plaintiff's first claim asserts that Defendants violated section 510(a) of the California Labor Code by failing to pay Plaintiff for required overtime.  Complaint ¶ 41.  Plaintiff argues that Defendants violated this section by failing to pay for time he spent working off the clock—including uncompensated time spent coming in early and leaving work late, completing off-clock pre-shift and post-shift tasks, and working through meal and rest periods.  Complaint ¶ 15.

The gravamen of Defendants' preemption argument vis-à-vis this overtime claim is the contention that the wage requirements of Section 510(a) do not apply because Plaintiff was covered by a collective bargaining agreement that meets the requirements of Section 514 by providing Plaintiff with premium pay greater than 130% of the state minimum wage.  *See* Def's Mtn. to Dismiss at  8–9.  This argument relies on two interdependent sections of the California Labor Code. First is Section 510(a)(2), which states that the overtime provisions of this section "do not apply to the payment of overtime compensation to an employee working pursuant to . . . . [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514." Cal. Lab. Code § 510(a)(2). And second is Section 514, which states in relevant part that "Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the

---

[3] "Interpretation is construed narrowly; it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000) (internal citations omitted).  Defendants bear the burden of establishing jurisdiction and "any doubt is resolved in favor of remand."  *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1007 (N.D. Cal. 2001) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988)).

employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. Relying on these two sections, federal and state courts have routinely held that, if the relevant CBA covering a plaintiff's overtime claim meets the requirements of Section 514, then that claim exists "solely as a result of the CBA" and is therefore preempted under the LMRA. *See Curtis*, 913 F.3d at 1154.[4]

Here, the terms and conditions of Plaintiff's employment with Defendants (which began in June 2023 and continues to the present) are governed by *two* CBA's—the first effective from November 1, 2018 through October 31, 2023, and the second effective from November 1, 2023 to the present. *See* Declaration of Pankit Doshi ("Doshi Decl."), Ex. A at Art. 35 [Dkt. No. 13-2]; Supplemental Declaration of Pankit Doshi ("Supp. Doshi Decl."), Ex. A at Art. 35 [Dkt. No. 28]. The first CBA also governs almost all of the four-year damages period invoked by the Plaintiff for the putative class. *See* Complaint ¶¶ 41-43.

Plaintiff cannot dispute that the *second* (later) CBA meets the 130% premium pay threshold of Section 514. The 2023 pay rate specified in the second CBA for the Inland Empire (where Plaintiff works) is $20.72—more than 30% greater than the 2023 California minimum wage of $15.50.[5] *See* Doshi Decl., Ex. A at Art. 9; *see also* www.dir.ca.gov/dlse/FAQ_MinimumWage. And the rate for 2024 and thereafter is similarly in excess of the 130% threshold. *Id*.

But Defendants cannot dispute that the *first* CBA (which covered the first period of Plaintiff's employment) does *not* meet this 130% threshold. For example, the wage rate in Riverside County applicable to Plaintiff when he first started in June 2023 was $16.00—clearly nowhere near

---

[4] Section 514 is considered an affirmative defense regarding the exemption from overtime laws, and the employer bears the burden of proving the employee's exemption. *See Martinez v. Omni Hotels Mgmt. Corp.*, 514 F. Supp. 3d 1227, 1238 (S.D. Cal. 2021) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 197–98 (1974)).

[5] 130% of the 2023 minimum wage is $20.15. The second CBA also appears to meet the premium pay threshold for all *other* employees, a requirement of Section 514. *See* Section 514 discussion, *infra*.

the $20.15 premium pay level required under Section 514.[6]  *See* Supp. Doshi Decl., Ex A at Art. 9. The same deficiency also applies to the other counties covered by the CBA.  *See, e.g., Id.*, Art. 9 (Los Angeles County ($17.50), Orange County ($17.75), San Diego County ($18.00)).

The key first question therefore becomes the following:  Does California Labor Code Section 514 provide a basis for satisfying Step One of the *Burnside* test when a portion of Plaintiff's claim is governed by a CBA that fails to meet the premium pay threshold?  The Court concludes that it does not.  Four separate reasons support this finding.[7]

First, a piecemeal approach to Section 514 is inconsistent with the plain language of *Burnside* and its progeny.  Step One of the *Burnside* test asks whether the "right exists *solely* as a result of the CBA. . . ."  *Burnside* 491 F.3d at 1059 (emphasis added).  Stated differently, "[t]he essential inquiry is this: Does the claim seek *purely* to vindicate a right or duty created by the CBA itself?"  *Columbia Export Terminal*, 23 F.4th at 842 (quoting *Curtis,* 913 F.3d at 1152)(emphasis added).  Here, Plaintiff's overtime claim cannot be said to arise "solely" or "purely" out of a CBA because for the earlier damages period the right *arose out of California wage and hour law.*  Section 514 cannot exempt the application of California law for this earlier period since there was no qualifying CBA to nullify the applicability of Section 510(a).

Second, Defendants' argument is inconsistent with the plain language of Section 514.  Again, this section states:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and ***if the agreement provides premium wage rates for all overtime hours worked*** and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514 (emphasis added).  In the present action, the second CBA—the purportedly

---

[6] The first CBA also provided, "Minimum wages for the duration of this agreement shall be no less than $1.00 over any applicable state or municipal minimum wage.  Supp. Doshi Decl., Ex. A at Art. 9.5.  But even adding this into the base wage rate would be well below the premium benchmark.

[7] The Court has been unable to find any binding Ninth Circuit or California precedent addressing this situation, and the parties have not cited to any dispositive caselaw.

7

1  "valid" CBA—does not provide premium wages rates for "all overtime hours worked" because it
2  does not apply these qualifying wages to Plaintiff's overtime hours worked from June through
3  October 2023. *Ipso facto*, it cannot exempt Plaintiff's overtime rights under California law.

4  Third, Section 514 is inapplicable on this record because the first CBA does not provide
5  premium wages to the "other employees" covered by the agreement. There is a split among district
6  courts on the question of whether Section 514 requires a qualifying CBA to provide premium wages
7  merely to the plaintiff or to all other employees in the bargaining unit. *See Rooney v. Save Mart*
8  *Supermarkets*, No. 2:20-CV-00671-JAM (FEBx), 2020 WL 3819481, at *3 (E.D. Cal. July 8, 2020)
9  ("CBA does not meet Section 514 's requirements [if] it does not meet the requirements with respect
10 to *all employees*.") (emphasis in original); *Sarmiento v. Sealy, Inc.*, No. 18-CV-01990-JST, 2019
11 WL 3059932, at *9 (N.D. Cal. July 12, 2019) (concluding that whether a collective bargaining
12 agreement provides a sufficient regular hourly rate of pay under section 514 "must be determined by
13 reference to all of the covered employees"); *Nordman v. Bon Appetit Mgmt. Co.*, No. 23-CV-00703-
14 DMR, 2023 WL 3006563, at *3 (N.D. Cal. Apr. 18, 2023) (Defendants must establish that the CBAs
15 provide a "regular hourly rate of pay ... of not less than 30 percent more than the state minimum
16 wage" for all employees covered by the CBAs). *But see Huerta v. Doubletree Emp. LLC*, No. SA-
17 CV-23-02433-CJC-ADSX, 2024 WL 890548, at *3 (C.D. Cal. Mar. 1, 2024) (reasoning that the
18 legislative intent and policy considerations behind CBAs would be undermined "were the Court to
19 conclude that simply because the CBA does not fulfill Section 514's requirements as to some
20 employees, neither Section 504 nor Section 301 would apply to any of the employees."); *Sachs v.*
21 *Pankow Operating, Inc.*, No. 2:21-CV-08998-ABA-DSX, 2022 WL 489696, at *6 (C.D. Cal. Feb.
22 16, 2022) (concluding that because the vast majority of employees were paid at the rate required
23 under Section 514, the fact that a fraction of employees were not, should not foreclose the
24 application of Section 514).

25 But the better-reasoned approach—and the one most faithful to the text of the statute—is to
26 require a finding that the 130% wage premium applies to *all* union employees. Judge Gonzalo
27 Curiel of the Southern District of California provides a succinct and persuasive textual analysis:
28

> The statute references "employee" or "employees" in three phrases: (1) "an employee" to which the statute applies; (2) "the employees" for which the CBA must provide the wages, hours, and working conditions; and (3) "those employees," which must refer back to either (1) or (2). The difference between "an employee" and "the employees" is clear: "an employee" merely delineates *who* the exemption applies to and is in singular form, while "the employees" refers to plural "employees" for which the CBA must provide certain conditions. It is logical that "those employees" refers to "the employees" for which the CBA must provide wages, hours of work, and working conditions, as this is the statute's only other reference to plural "employees." Further, "those employees" and "the employees" are stated in the context of the statute's two requirements for the exemption to apply, while "an employee" describes who the statute applies to. Thus, "those employees" who must earn 130% of the state minimum wage are necessarily the same employees for which the CBA must provide the wages, hours, and working conditions.

*Allmaras v. Univ. Mech. & Eng'g Contractors, Inc.*, No. 24-CV-01581-GPC-SBC, 2024 WL 4860804, at *4 (S.D. Cal. Nov. 20, 2024). The upshot of this finding is that Section 514 cannot apply here for the simple reason that the "other employees" in the Plaintiff's bargaining unit undisputedly did not receive premium wages for the damages period, and therefore Plaintiff's overtime claim must be viewed as arising out of state law and not purely a CBA. *Cf. Huffman v. Pac. Gateway Concessions LLC*, No. 19-CV-01791-PJH, 2019 WL 2563133, at *6 (N.D. Cal. June 21, 2019) ("Because the San Jose CBA plainly failed to provide a regular hourly rate of pay of not less than 30 percent more than the state minimum wage for at least some employees, Section 514 does not bar Section 510 from applying to plaintiff. As such, plaintiff's asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA.").

And fourth, several district courts facing similar facts involving two or more CBAs (covering different time periods) have assumed, albeit without substantive analysis, that all CBAs would have to satisfy the premium wage requirements of Section 514. In *Garza v. WinCo Holding, Inc.*, No. 1:20-CV-01354-JLT-HBK, 2022 WL 902782 (E.D. Cal. Mar. 28, 2022), for example, the court noted that two CBAs applied to the relevant employment period and concluded that the premium rates would need to apply to all employees covered by the two CBAs:

> The first CBA, attached as Exhibit A to the notice of removal, pertains to the employment period from August 11, 2014, through August 10, 2019. The second CBA, attached as Exhibit B, covers employment from August 11, 2019, through August 10, 2024. . . . Put

> another way, Defendants must establish that the **CBAs** provide a "regular hourly rate of pay ... of not less than 30 percent more than the state minimum wage" for all employees covered by the **CBAs.**

*Id*. at *3 (internal citations omitted)(emphasis added). The court repeated this finding later in its opinion: "whether Garza's overtime claims are preempted depends on whether the **CBAs** meet these three requirements." *Id*. at *11 (emphasis added). Similarly, in *Kilbourne v. Coca-Cola Company*, No. 14CV984-MMA (BGS), 2014 WL 11397891, at *5 (S.D. Cal. July 14, 2014), plaintiff was subject to two separate CBAs governing different periods of employment:

> This agreement, referred to as the "BCI CBA," governed Plaintiff's employment from March 20, 2010 until May 31, 2011, when the BCI CBA expired. The second agreement was negotiated between Coca-Cola Refreshments USA, Inc. – Oceanside Facility and the Teamsters Local No. 683 labor union. This agreement, referred to as the "CCR CBA," governed Plaintiff's employment from June 1, 2011 until February 11, 2013, the date Plaintiff's employment terminated.

*Id*. at *1. Judge Anello of the Southern District of California analyzed Defendants' argument that Section 514 applied to the plaintiff's overtime claims under ***both*** CBAs:

> Defendants assert the CBAs at issue—the BCI CBA and the CCR CBA—satisfy the three requirements of section 514 and therefore exempt Plaintiff from section 510's default overtime provisions. First, Articles 17 and 18 of the CBAs provide for the wages, hours of work, and working conditions of the employees subject to the CBAs terms. *See* Arts. 17, 18. Second, the CBAs expressly provide premium wages for all overtime hours work. . . . And finally, Article 17 of the CBAs provides a regular hourly rate of at least 30% above state minimum wage.

*Id*. at *5. The court pointed out that there was no dispute that the premium wage threshold was met for both CBAs: "Plaintiff does not dispute that the CBAs govern Plaintiff's employment for the relevant time period—from March 20, 2010 through February 11, 2013. Additionally, Plaintiff does not dispute that the CBAs satisfy the first and third requirements of section 514." *Id*. at *6. And Judge Anello concluded by applying the relevant test to both CBAs: "Because the CBAs' definition of "overtime" applies, the Court finds the CBAs satisfies the second requirement by providing for premium wage rates for all overtime hours worked." *Id*. at *8. *See also Nordman v. Bon Appetit Mgmt. Co.*, No. 23-CV-00703-DMR, 2023 WL 3006563, at *4 (N.D. Cal. Apr. 18, 2023)("In sum, because the CBAs do not provide a minimum hourly rate of not less than 30 percent more than the

state minimum for all covered employees between 2019 and the present, . . . Plaintiffs' overtime claim does not exist 'solely as a result of the CBA[s]' and the claim is not preempted at step one of the LMRA preemption test.")(cleaned up).  While these district court decisions are not binding on this Court, they reaffirm the commonsensical conclusion that Section 514 must be applied to the entirety of Plaintiff's employment period.  Step One of *Burnsides* is not satisfied.

As to the second step in *Burnside*, Defendants do not advance any argument—presumably on the assumption that the Section 514 argument is fully dispositive.  *See* Motion to Dismiss at 9.  But even if one had been made, it would not prevail.  Again, the test is "whether a plaintiff's state law right is substantially dependent on analysis of the CBA which turns on whether the claim cannot be resolved by simply looking to versus interpreting the CBA."  *Curtis*, 913 F.3d at 1153.  Here, no interpretation is necessary.  It is clear from the CBAs that all work performed in excess of forty hours in a workweek, or more than eight hours in a workday, is overtime and the employees shall be compensated at the rate of time and one-half the employees' hourly rate.  *See* Doshi Decl., Ex. A at Art. 10; Supp. Doshi Decl., Ex. A at Art. 10.  There is no interpretation required to calculate the overtime wage rate or to determine the number of overtime hours—all a court must do is refer back to the agreement.

### B.  Claim Three:  Meal Break Violations

The analysis for Plaintiff's meal break violation claim is similar.  Plaintiff asserts a cause of action for Defendants' failure to provide meal periods pursuant to California Labor Code Section 512 and Section 226.7.  Complaint ¶ 17.  Section 512(a) provides that employers must provide employees with 30-minute meal periods when employees work more than five hours a day, and a second meal period when employees work more than ten hours each day.  *See* Cal. Lab. Code § 512(a).

However, Section 512(e) states that the meal break provisions of Section 512(a) do not apply to certain classes of employees (including Plaintiff) if the employee is covered by a valid collective bargaining agreement that—among other requirements not relevant here—expressly provides for a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.  *See*

Cal. Lab. Code § 512(e); Cal. Lab. Code § 512(f). But as described *supra*, the 2018–2023 CBA simply does not meet the 30% premium pay requirement. As a result, the Court finds that the right to meal breaks arises (at least in part) under state law and not under the terms of the CBA.[8] Again, Step One of the *Burnside* test cannot be met on this record.

As to Step Two, Defendants argue that interpretation of the CBA is required to determine whether a valid written agreement to provide on-duty meal periods exists, and whether the provisions provide valid on-duty meal period. Reply in Support of Motion to Dismiss at 10 [Dkt. No. 21]. The argument is unpersuasive. The terms of the CBAs are unambiguous, not in dispute, and require no interpretation. The Court only has to look to the CBA to address Plaintiff's claim. Indeed, courts presented with similar meal breaks provisions have likewise concluded that they are unambiguous and rejected the same, oft-made argument that interpretation is somehow required. *See Atuatasi v. Securitas Sec. Servs. USA, Inc.*, No. LA18CV2786VAPPLAX, 2018 WL 2748259, at *5 (C.D. Cal. June 6, 2018); *see also Bradford v. Pro. Tech. Sec. Servs. Inc. (Protech)*, No. 20-CV-02242-WHO, 2020 WL 2747767, at *8 (N.D. Cal. May 27, 2020) (same). The meal break claim is not preempted under Section 301 of the LMRA.[9]

### C. Claim Four: Rest Break Violations

Plaintiff's fourth claim asserts that Defendants failed to provide rest breaks as required under California law. Specifically, Plaintiff contends that Defendants failed to permit Plaintiff to take rest periods of at least ten minutes per four hours worked. Complaint ¶ 18.

Defendants seeks dismissal of this claim based solely on Step Two of *Burnside*. Defendants point out that the CBAs require breaks of "not less than 15 minutes" (as opposed to 10 minutes as

---

[8] The CBAs do provide that security officers are entitled to on-duty meals breaks. *See* Doshi Decl., Ex. A at Art. 10.5; Supp. Doshi Decl., Ex. A at Art. 10.5.

[9] Plaintiff does not dispute that the CBA meets the other requirements in Section 512(e). Even though *Curtis* did not discuss meal break claims, "its analysis regarding section 514 appears to map seamlessly onto claims arising under sections 512 and 226.7." *Taylor v. NBC W., LLC*, No. CV-19-7663-DMG-PLAX, 2020 WL 8268197, at *2 (C.D. Cal. Jan. 2, 2020).

required by California law.) Doshi Decl., Ex. A at Art. 10.6; Supp. Doshi Decl., Ex. A at Art. 10.6. The CBAs also require that a "Meal and Rest Period Report" be completed and submitted if an employee misses a rest period. *Id*. at Art. 10.7. Defendants argue that because they provisions differ from California law, they will require interpretation. Motion to Dismiss at 11.

The Court disagrees. Reviewing the text, the Court concludes that there is no need to interpret the CBAs to determine when the rest periods should have been taken, how long they should have been (at least 15 minutes), and/or whether they were missed or waived. Judge Phillips reached a similar result in *Atuatasi*, 2018 WL 2748259. In that case, the plaintiff security guards were provided fifteen-minute breaks for each four hours worked. *Id*. at *5. Judge Phillips persuasively found the rest break provisions of the CBA to be unambiguous and rejected the argument that the agreement needed interpretation to determine "when to take a break, how long a break would be, and how the break would be treated in terms of compensation." *Id*. The same reasoning applies here.

### D. Remaining Claims

Defendants argue that the remaining wage claims are derivative of the overtime, meal break, and rest period claims, and will thus require similar interpretations of the CBAs. Motion to Dismiss at 12. The Court agrees with the premise, but not the conclusion. These other remaining claims are similar to the claims discussed above, and therefore fail the *Burnside* test for the same reasons. None of them arises "solely" out of the CBA (to the contrary, they principally arise out of California wage and hour laws), and none of them requires an in interpretation of the CBAs. Indeed, Defendants do not identify any relevant legal disputes about any contested terms relating to these other claims.

### E. Motion to Remand

This action was removed solely on the basis of LMRA preemption. *See* Notice of Removal. [Dkt. No. 1]. Because the Court has now concluded that Section 301 of the LMRA does not preempt any of the claims pled in the Complaint, there is no subject matter jurisdiction and the entire action must be remanded to state court.[10] *See Rodriguez v. S E Pipeline Constr. Co.*, No. 2:23-CV-08769-

---

[10] For this same reason, the Court does not reach the issue of whether Plaintiff exhausted the grievance

WLH (MRW), 2023 WL 9319043, at *5 (C.D. Cal. Dec. 1, 2023) (remanding remaining state law claims for lack of subject matter jurisdiction).

## V.  CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motion to Dismiss and grants Plaintiff's Motion to Remand.

Dated: January 27, 2025

_____
Hernán D. Vera
United States District Judge

---

procedures as outlined in the CBA.